Good morning, your honors. May it please the court. Clear, unequivocal, and convincing. Clear, unequivocal, and convincing is a standard that the government must meet in order to denaturalize someone. In this case, the government filed for judgment on the pleadings and the The main basis for the court's error is the fact that it concluded that collateral estoppel prevented my client, Mubarak Hamed, from arguing that his guilty plea did not render him subject to denaturalization. Is there any relevance to the fact that I understand that on the guilty plea the standard or the burden of proof is different, or the standard of proof he does is plea to something that must be proven beyond a reasonable doubt? We don't believe so, Judge. According to the cases that have analyzed it, it's just the fact that the court takes the plea that's substantively different than in situations where there's an actual trial and the person is found beyond a reasonable doubt. So, so far I haven't seen any cases that draw the distinction that you just make, and rather it's just that the standards are so different. Clear, unequivocal, and convincing is the civil equivalent, and we talked about this with Judge Wimes-Vallone during the argument of the motion, that it's the equivalent of beyond a reasonable doubt. And so it's the highest standard in the civil law, and therefore the government should not be allowed to use the guilty plea, which was just, as you say, the factual basis for it, as a basis to denaturalize it. Well, but the standard you're citing for factual basis is, only applies to the factual basis. The conviction involves both the factual basis and the defendant's admission that I did it. So that's more than just the factual basis standing alone, which is what has to be enough to show the crime was likely committed. You now have that plus the guy admitting that Why doesn't that take you up to the equivalent of a trial guilty verdict? Because the distinction is that the court made no independent determination beyond a reasonable doubt that he had committed it. I understand what you're saying, Your Honor, that he had admitted to doing it, but this whole idea that it was knowing or that he knew what he was admitting, when it comes to the plea itself, we believe it doesn't match and it shouldn't be applied. So you think we should feel that everybody who's in prison for a guilty plea is in there based on some sort of preponderance-type standard, whereas only people who have been convicted after trials have really gone to the reasonable doubt level? But we're talking about denaturalization here. I understand what you're saying in that you're drawing that. Well, that's the implication of your position, isn't it? We believe that when you talk about denaturalization, that it has to be a separate analysis within the denaturalization hearing itself. You can't just look at the fact of the plea and say ipso facto, you're denaturalized. Isn't that the essential effect of concluding that there's an estoppel? Right, that's the problem with the estoppel, is that they're saying that the judge is – there was no analysis of his knowledge. It was just the admission and the entering into the plea that the estoppel shouldn't apply because the judge was analyzing it at that lower standard. The judge wasn't analyzing it in the criminal case the same way Judge Wyme should have been. Judge Wyme should have been looking at it and done his own independent factual analysis, had a hearing on whether or not my client should be denaturalized. And my client missed out on that because the judge said, well, collateral estoppel, you plead guilty, so therefore none of your factual distinctions matter, none of your allegations matter, we don't have to have a hearing, we don't have to conduct our own independent analysis, it's just the simple fact of that guilty plea therefore renders you to lose your citizenship. We believe that that does not rise to the level of clear, convincing, and unaccused – To get back to Judge Colleton's point, though, generally speaking – and you can tell me if I'm wrong about this – I can't think of instances in which convictions by guilty plea are treated differently for legal purposes than convictions by a jury. Now, getting to his point, yes, some of the underlying validity of the plea is treated differently. We look at the factual basis by a preponderance-like standard, but doesn't your argument sort of violate that fundamental rule that a conviction by a plea is essentially the same as a conviction by a jury? I think, no, I don't think so, Judge. I understand the point that you're making, but I think that here, the fact that the government has to prove it by clear and convincing evidence, that renders him entitled to an actual hearing. I understand what you're saying. I understand that you're saying that the fact that he pled guilty therefore sort of seals it at that level. But I believe that the court still owes it and the law requires it. What is it that the government has to prove at that standard? That's what I'm saying, Judge. That's what I'm trying to say. I'm asking you, what is it that the government must prove at that standard? They have to prove that he's clearly not entitled to have become a citizen. And what was one of the ways of doing that? Wouldn't that be proving that he's committed a particular crime? Well, I think we need to look at this particular crime in light of the crime that it was. So it's not like the earlier cases that you had this morning, where the person was saying, well, I was downloading child porn, but I didn't know it, or I had committed a murder and I didn't know I was a felon. This is a very complex tax law, or there was the Iraqi sanctions and the tax laws to which he ultimately pleaded guilty. And it's our position that when he went to his naturalization interview, he didn't know that he was committing any crime. His plea was many years later, and most importantly, there was a letter from OFAC that put him on notice, put the agency that he worked for on notice that they were in violation of the sanctions. That letter came eight months after he naturalized. And so it's our position that if that letter had come before he naturalized, well, then, of course, it's obvious that he knew that he was committing a crime. But here he didn't know that he was committing a crime. And we think that's a very important distinction. And it also goes to his state of mind at the time that he naturalized. So we believe But the problem I see, and I'm just thinking out loud here, is that the difficulty of this case is the charges to which he pled. There were numerous others that were dismissed. But the ones to which he pled, the operative time of the conduct that he was accused of having done was within the timeframe that could bring into question the answers that he put to the naturalization questions. So when he admits doing that conduct within that timeframe, that creates the problem that I see your client is facing, is that when he says I did that, he is placing himself back in that timeframe in saying that he did it. But I also understand your position, which is at the time he answered those questions, he wasn't even aware, or at least it's now his position, he wasn't aware that he was doing anything illegal. But he's now in the he's against himself. He has confessed to doing something which at an earlier time he didn't at that point he says now didn't believe he was doing anything illegal. But he's now subsequently said I was. There's no doubt, your honor, that he admitted when he pleaded guilty to that. You're absolutely right. And there's no doubt that it happened during the statutory period. But there's also this is a question of fact as far as his subjective intent, his state at the time. And that's why we need to have a hearing. That's why it shouldn't have been decided on a judgment on the pleadings. Judge Wyme should have had a hearing and should have allowed Mr. Hamed to testify and for him to come into court and for the judge to ask the question. Wouldn't that kind of have an effect of almost a habeas case of arguing the invalidity of his conviction? No, because what we're talking about is whether he was entitled to naturalize and his state of mind at the time that he naturalized. I'm not trying to undo any convictions. I'm just trying to get the court to acknowledge that the defendant, Mr. Hamed, was entitled to a hearing and that he was that, according to the case law, it should have been decided on the on the pleadings. It should have been something where a full hearing is held. And the judge, Mr. Mr. Hollis, could have cross-examined Mr. Hamed on his prior guilty plea and use that to to weaken our position. But at the end of the day, the law says that he's entitled to a hearing. It's a denaturalization. So if he gets a hearing, won't the effect of that hearing be essentially to challenge the validity of the conviction? I believe it'll be based on confession. I'll be I believe it'll be to challenge whether or not he loses his citizenship. He he he will have he will be in a position where he will have admitted having committed the crimes at issue, but at the same time, he will be able to put on extenuating circumstances, all the other issues that we raise in our brief that sort of goes to mitigation or his ability to naturalize in and of itself. Well, he'll say I plead guilty. I've pleaded guilty. But actually, there was not proof beyond a reasonable doubt or clear and convincing evidence even of my guilt. That's our position. But here's here's the real question. I have a real question. I have for you. It's a little different than we've been talking about, which is the underlying factual basis. And this gets a judicial estoppel rather than collateral estoppel. And I wonder whether the district court got it right for the wrong reason. And maybe it was maybe the district court was in the factual basis for the plea. He admitted to knowingly and willfully conspiring, confederating and agreeing to violate Executive Orders 17222 and 12724 and the Iraq sanctions regulations in violation of several U.S. Code provisions. That admission by itself, if we credit it, is good enough to get on the third ground. The district court looked at knowingly misrepresenting herself on the on the app. That is good enough by itself. Sustain that particular denaturalization holding. So the should we let him out of that admission? And if so, why? Because normally, if you admit something in court, you can't admit it later in some other case. I understand that, judge. But I think it has to be taken in this totality. And I think there has to be a hearing. And Mr. Hollis took Mr. Ahmed's deposition. And Mr. Ahmed testified that he didn't know anything about I mean, he you're right. He pled guilty. And you're right. It says and he said that it says in language that it's knowingly. You're right, judge. There's no doubt. But we believe that the law says he's still entitled to a hearing that that it shouldn't it shouldn't cause a stop. And it should he should be allowed in the civil proceeding that's brought eight years after to raise his defense. We might be up here again. We might lose after a motion for some judgment. We might lose after a full hearing. But we believe that Mr. Ahmed is entitled to that. So I can admit something and then come back in a later case with some of the problems that the chief judge identified and say, yeah, actually, that's wrong. I that's just not true. What I admitted to as part of my plea agreement just isn't true. I want to prove that it's not true by clear and convincing evidence. We're not arguing that he didn't do that during the period. We're not trying to undo that. We're trying to establish is that at the time that he naturalized, he didn't know that that was a crime. That's the distinction that I'd like to draw, even though he admitted in the plea agreement that he did. He knowingly and willfully did it. Yes. And was convicted. See, I just can't. I don't know that I buy that argument. OK, fair enough. I'm going to save my two minutes. Thank you, Mr. Hacking. Thank you both all. Mr. Hollis. Morning, Your Honor. I'll just go directly to some of. Some of the pellets arguments here they just made in order to credit the argument that. Mr. Hamid's knowing and willful. Acknowledgement that he committed the crimes of issue here. This court would have to disregard the plea agreement. Paragraph 21, Mr. Hamid's acknowledgment that he freely that he freely pled guilty and that would be a variation of allowing Mr. Hamid to challenge his criminal conviction without challenging the criminal. As far as collateral estoppel goes, this court. The issues aren't exactly the same. If you take the four elements of collateral estoppel, are they present here? Where's the analysis to indicate that that's an appropriate analytical tool? Your Honor, if we approach collateral estoppel from an issue preclusion perspective, the primary argument that Mr. Hamid would make is that. The issue wasn't decided, and that's the issue of whether the government meets the standard here wasn't decided there or variation of that. The government is not now challenging. And I don't think the plaintiff can challenge, excuse me, Mr. Hamid can challenge whether he knowingly pled. Whether he knowingly and willfully committed these crimes and whether he pledged to those crimes. So the government's not using, it's not trying to challenge that issue. The government is using the fact of his plea as a basis for revoking his naturalization in this matter. He's precluded from now challenging the fact that he pled guilty knowingly and willfully to these crimes. And it's spelled out right at the outset of the plea agreement paragraph 2, Your Honor. I'm happy to explore further questions on the issue of collateral estoppel if Your Honors have them. Some important issues that I think Mr. Hamid makes that need to be addressed. Well, let me ask you this. Did you raise judicial estoppel, which is a slightly different form, which is he made this admission before and he stuck with his admission and later related judicial proceedings? No, Your Honor. The government did not raise the issue of judicial estoppel. Did you do it in essence maybe by the argument you were making or is it just off the table do you think here? Well, yes, the government did make that argument. By challenging, the government's making the argument that Mr. Hamid is essentially challenging his criminal conviction tangentially. And that's improper. If he wants to challenge his criminal conviction, he should challenge his criminal conviction, writ of coram nobis or habeas petition or some variation of that. If with the court's indulgence, I'd like to address some of the accounts in the government's complaint for naturalization revocation of Mr. Hamid. One of the primary arguments that Mr. Hamid makes is that extenuating circumstances exist here. And this goes to the government's argument in count three of the complaint that Mr. Hamid committed unlawful acts that rendered him ineligible, rendered him ineligible for naturalization at the time that he naturalized. The primary argument that Mr. Hamid challenges on appeal is whether the court properly addressed extenuating circumstances that Mr. Hamid purports to have argued. And at the outset, it's important for the court to note that Mr. Hamid didn't argue before the district court what would be considered extenuating circumstances. He argued instead what he himself has termed positive factors. And those would be his charitable, his works of charity, his work with the charitable organization, whether it be through establishing refugee camps or setting up schools. He argued positive factors. That is not going to be sufficient to demonstrate extenuating circumstances that would mitigate or palliate his guilt for the crimes that he pled to. And we know that because there are several cases that specifically lay out the requirement that a retrospective on a naturalization, on a naturalized citizen's achievements is not going to be sufficient to show extenuating circumstances. A showing of all the good things that a person has done is not going to be sufficient to demonstrate extenuating circumstances. In order to do that, we need to have Mr. Hamid articulate actual palliating, mitigating circumstances. For example, he could argue, as he has, that the government argues it would be, he's argued it's insufficiently, that he lacked knowledge. We have several instances in the plea agreement where Mr. Hamid explicitly acknowledges his acts and his level of authority, which he now claims he lacked in specific to count 33, in signing an IRS form 990 repeatedly over the course of several years during his good moral character period. Mr. Hamid acknowledges in the plea agreement at paragraph 3h that he was aware of and caused the Islamic American Relief Agency to raise money for transfer to persons in Iraq. He acknowledged that. He acknowledged that he authorized and approved of all transfers of funds to al-Sudanay. That was a contact he had in Jordan, knowing that the money would be transferred from Jordan to Iraq. So he acknowledged in the plea agreement the acts that he misrepresented on in the form 990 and that he failed to acknowledge were crimes in completing his naturalization application. Extenuating circumstances don't exist here. At best, some positive factors exist and that's with regard to count 3 of the government's complaint seeking naturalization revocation for Mr. Hamid's unlawful acts. With regard to count 2 of the complaint and the government seeking naturalization revocation for Mr. Hamid having committed a crime involving moral turpitude, the 8th circuit, let me take a step back, this term crime involving moral turpitude is not necessarily defined in statute. It's not defined in statute. It's defined through case law and in the 8th circuit the court defines it as an act of baseness, violence or depravity in the private and social duties but more importantly it also defines it as violating duties that people owe each other or that they owe to society in general as contrary to the accepted rule of right and duty. And part of this inquiry in the 8th circuit is whether an act is accompanied by a vicious motive or a corrupt mind. The language of count 33 to which Mr. Hamid pled 26 U.S.C. 7212a obstructing the due administration of internal revenue laws, the language of that statute itself demonstrates that a corrupt mind is a portion of that statute. A corrupt mind is encompassed within that statute and it inheres in that statute. Now that statute is not categorically a crime involving moral turpitude. That statute is what the courts have termed divisible. We can review the portions of that statute that demonstrate that moral turpitude inheres in that statute and when the court applies that categorical analysis and applies what the 8th circuit has termed in Viatoro step two or what it is later termed as what other courts term it the modified categorical approach. We review the record of conviction and that's when we're able to take and willfully committed acts specifically the crime involving moral turpitude knowingly and willfully completed a form 990 and provided false information on that form. There's this issue of Mr. Hamid raises the issue of whether he knew in completing the forms that he was pleased that he knowingly and willfully committed these crimes. It's important to note that the form 990 has a set of instructions with it and that set of instructions lets the signatory on that form know that he's subject to fines or imprisonment for submitting false information of that form 990. So at the outset, Mr. Hamid was aware in signing that form that he was subject. So let's say if the conduct he was doing at the time, sending money in prohibition to federal law, at least to the rules at that time, if it was questionable, if it was well, maybe it is, maybe it's not, and he's going ahead and doing his charitable work and getting things back. And he fills out the 990 not really knowing that what he's doing is in direct contravention to federal law. Why is that such a heinous act to afterwards when he finds out, was he under an obligation? What if he had wrote in and said, you know, when I filled it out, I was incorrect because now I've discovered that what I was doing was improper and I shouldn't have been. Now, wouldn't that have subjected him, would that have subjected him to denaturalization as well? That would be a different case because we wouldn't be considering his plea agreement to having done, to having completed those forms and provided false information knowingly and willfully at that time. That would be a different case. And 8th Circuit precedent itself holds that there are two important points to make. I'll take a, I'll take a step back with the card to collateral estoppel. There's no question, and Judge Strass raised this issue earlier in the 8th Circuit. It holds that collateral estoppel applies equally whether the previous criminal conviction was based on jury verdict. So collateral estoppel can apply here. Acknowledging that Mr. Hamid pleaded guilty rather than was found guilty through jury trial. Equally important though is that the 8th Circuit also holds that if a criminal, if, if, if one who pleads guilty to a crime acknowledges knowingly and willfully committing the crime in a plea agreement, they can't later argue that they didn't know at the time of the crimes that they were committing crimes. And I can cite the, I can cite the. Well doesn't that defend, depend on the elements of the particular crime? Some crimes have a higher knowledge requirement. Like a tax crime where you have to know under the cheat case that you were violating the code. Some you just have to know you did the illegal act. You don't have to know that what you were doing was illegal. Yes, Your Honor. Does this case fall under the former category? Because the willfulness requirement demanded that proof? Yes, Your Honor. He, in completing, yes, yes it does, Your Honor. Yes it does, Your Honor. And I'm, with the court's indulgence, I'll, I'll cite the court to that case. It's al-Aqa'ili and I acknowledge it's not a, it's a FedAppendix case. It's a 550 Fed, Federal Appendix 356 and 358 and it holds that a plea to knowing commission of a crime is stops, a challenge to whether the defendant knew that the conduct was illegal and. Well I'm just questioning that as a logical matter. If you, if you plead guilty to certain knowledge, crimes that have knowledge as a mens rea, the knowledge doesn't require proof that you knew the law. The government just has to prove in a lot of criminal cases that you knew that you took the action. But there are certain criminal statutes where you do have to prove more knowledge, like the tax code. And I'm trying to, you don't seem to appreciate that distinction. You're arguing that if you had knowledge as an element of the crime, then it's automatically shows you knew what you were doing was illegal. Well the government's, I'm sorry. Go ahead. The government's arguing that Mr. Hammad doesn't contest whether he had knowledge of the crime. He acknowledges that he had knowledge of the crime in his plea agreement, plainly. What do you mean by knowledge of the crime? He acknowledges that he knew that he committed these crimes at the time he did by virtue of pleading guilty to them, knowingly and willfully committing them, your honor. I see that I'm out of time, your honors, and unless the court has any further questions, I'll rest. Thank you, Mr. Hollis. Just real quickly, your honors, this is a civil procedure case. Ultimately, it has a lot of interesting issues, like denaturalization, and it certainly has a severe impact for my client. But at the end of the day, it's a, it's a civil procedure issue. And the question I think the the standards are in the underlying civil criminal case and the civil case. Does the court want to make that jump that no court has has made before that says that the distinction between a guilty plea standard and the standard for revoking someone's citizenship, that that doesn't matter? So we would encourage the court to not do that. Do you have a, I'd answer to Judge Collinson's question, which is how do you understand the the language in the plea agreement? Was it knowledge that he had knowledge that he had committed the act or knowledge that he had committed a crime? At that point, I knew I committed a crime. I did something illegal. Judge, I wouldn't feel comfortable answering either way, because I don't want to mislead you. I wouldn't be able to answer that. I'm sorry. Okay, fair enough. My question wasn't about the language of the plea agreement. It was about the elements of the crime that he pleaded guilty to. Knowledge is an element of this crime, right? Yes, your honor. So you can answer, can't you, what the knowledge requirement was to violate that statute? I believe that it was that he knew that he was violating the law, yes. Okay, well then if he pleaded guilty to it, then he had to admit that he knew he was violating the law at the time he was doing the criminal conduct, which predated the naturalization. I believe that's correct, Judge, but I would just draw that distinction that I've tried to make, that even though he admitted later that what he did, he knew he was doing, that when he went into that naturalization examination and when he got sworn in to be a U.S. citizen, that he didn't know at that time that those were crimes. I understand your point, and I don't mean to bicker with you. Okay. I'm just trying to draw that distinction. I understand. At the end of the day, that Achilles case, as the judge points out, as Judge Appendix case, we believe that the court should refrain from making that leap that I mentioned at the start of my rebuttal, and we believe that the judgment on the pleadings was an error and should be reversed, that we go back down, have a hearing as to whether or not Mr. Hamed keeps his citizenship or not, and I thank you for your time. All right. Thank you, Mr. Hacking. Thank you also, Mr. Hollis. I appreciate the argument and the briefing, and we'll do our best with it. Thank you. Madam Clerk, would you call a final argument for this?